**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Zakeeius Leggions, | No. CV-21-08057-PCT-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Yongchau Chen, *et al.*, | |
| Defendants. | |

At issue are Defendant Big Brother Transportation, Inc.'s ("Big Brother") Motion for Summary Judgment (Graves Amendment Defense) (Doc. 124) and Motion for Summary Judgment on Independent Direct Negligence Claims and Punitive Damages (Doc. 167), the latter of which was joined by Defendants Yongchau Chen and Tengfei Trucking Incorporated ("Tengfei"). The Court finds oral argument unnecessary to resolve the issues raised by the parties, none of them having requested oral argument in any event. *See* LRCiv 7.2(f). The Court now resolves the Motions for Summary Judgment.

**I.    BACKGROUND**

Plaintiff Zakeeius Leggions initiated this action on behalf of himself and the statutory beneficiaries of his mother, Sophia Green. (Doc. 1, Compl.) Ms. Green died in the collision of two tractor-trailer trucks on Interstate 40 in northern Arizona on March 15, 2020. At the time of the collision, Ms. Green was in the sleeper portion of the tractor driven by her husband, Alfred Green. Mr. Chen was driving the second tractor, traveling in the same direction ahead of Mr. and Ms. Green. Mr. Leggions alleged that Mr. Chen

was operating his tractor-trailer at a speed considerably under the posted speed limit of 75 miles per hour when Defendant Alfred Green was unable to react in time to the position of Defendant Yongchao Chen's trailer-trailer [sic] and collided with the tractor trailer driven by Defendant Yonghao Chen [sic], resulting in the death of Sophia Green. Immediately after the collision, Defendant Yonghao Chen [sic] left the scene of the incident.

(Compl. ¶ 15.) Mr. Green also sustained serious injuries during the collision.

Mr. Leggions brought claims for negligence, wrongful death, and punitive damages against Mr. Chen, Tengfei, Big Brother, Mr. Green, and Contract Freighters, Inc. ("CFI").[1] With respect to Tengfei and Big Brother, Mr. Leggions alleged both were vicariously liable for Mr. Chen's conduct because he was acting within the course and scope of his employment by, or under the direction and control of, both companies. (Compl. ¶ 17.) Mr. Leggions further alleged that both Tengfei and Big Brother were "independently negligent in the hiring, training, retention, and/or supervision" of Mr. Chen. (Compl. ¶ 18.)

Defendants answered Mr. Leggions's claims and brought several cross-claims among them. Mr. Green brought cross-claims against Mr. Chen, Tengfei, and Big Brother for negligence, wrongful death, and punitive damages. (Doc. 39.) Like Mr. Leggions, Mr. Green alleged that Mr. Chen was at relevant times acting within the course and scope of his employment by, or agency of, Tengfei and Big Brother, and that both companies were independently negligent. (Doc. 39 ¶¶ 21–22.) Big Brother brought cross-claims against Tengfei for implied indemnity and breach of contract. (Doc. 25.) For its part, Plaintiff Protective Insurance Company ("Protective") initiated a separate action against Mr. Chen, Tengfei, and Big Brother for subrogation damages for the medical expenses of Mr. Green and property damage. *Protective Ins. Co. v. Chen*, No. CV-22-8040-PCT-JJT (D. Ariz. Mar. 11, 2022). The Court ordered Protective's lawsuit be consolidated with this one.

---

[1] Pursuant to a Stipulation by the parties, the Court subsequently dismissed Mr. Leggions's claims against CFI and Mr. Green. (Doc. 178.)

Big Brother thereafter filed the two Motions for Summary Judgment at issue.[2] In the first, Big Brother argues (1) it is immunized from liability under the Graves Amendment, 49 U.S.C. § 30106; and (2) it was not Mr. Chen's employer. (Doc. 124.) Mr. Green filed a Response in opposition (Doc. 132), in which Protective (Doc. 134) and Mr. Leggions (Doc. 137) joined. Big Brother filed a Reply (Doc. 143).

As relevant to Big Brother's first Motion for Summary Judgment, the record reveals the following facts. Tengfei is the entity through which Mr. Chen operates his trucking business; he is Tengfei's only owner. (Doc. 133, Ex. B, Deposition of Yongchau Chen ("Chen Dep."), at 16:10–17:13.) Big Brother and Tengfei do not share any officers or directors and maintain their own corporate records. At the time of the collision, Tengfei had two tractors and four employees; by the time of Mr. Chen's deposition in January 2022, it had grown to seven tractors and ten employees. At the time of the collision, Tengfei's only contract was with Big Brother. (*Id*. at 19:11–23, 20:14–23:19.)

Pursuant to their contract, Big Brother leased a semi-trailer to Tengfei for a monthly fee. (Doc. 125, Ex. B, Equipment Trailer Inter-Change Agreement ("Lease Agreement").) As Mr. Chen explained the arrangement,[3] Big Brother's employees would load the trailer with merchandise at a warehouse in California and a Tengfei employee would pick up the trailer for hauling and delivery to another Big Brother warehouse in a different location — Indiana, for example. (Chen Dep. at 41:25–45-1.) In Indiana, Big Brother employees would unload the trailer and reload it with different merchandise for the return trip. (*Id*.) The Tengfei employee would then haul and deliver the reloaded trailer back to California. (*Id*.) As Mr. Chen explained, "[i]ts Big Brother employee unload/loaded merchandise. My employee do the driving." (*Id*.) Mr. Chen testified he communicated with Big Brother during trips to provide updates. (*Id*. at 156:15–157:1.) When Mr. Chen was asked whether he "communicat[ed] with Big Brother during every trip you took for them when you

---

[2] Big Brother requested, and was granted, leave to file more than one Motion for Summary Judgment. (Doc. 109.)

[3] The Lease Agreement in the record in this case does not contain any provision related to the companies' employees or to loading, unloading, hauling, or delivering merchandise.

- 3 -

were—when you were making a delivery," he responded: "every time I communicate." (*Id*.) He also called Big Brother for interpreter assistance; he did so, for example, in the wake of the collision. (*Id*. at 153:8–154:4, 156:3–10.)

At the time of the collision, Mr. Chen was driving Tengfei's tractor hauling the trailer it leased from Big Brother, which had been loaded with merchandise by Big Brother employees at its warehouse in California to be hauled and delivered to Big Brother's warehouse in Indiana. (*Id*. at 43:13–46:3.) Mr. Chen testified this trip was "about the same" as the previous jobs he had done for Big Brother. (*Id*. at 45:3–6.) He picked up the loaded trailer at around 4:00 p.m. on March 14, 2020 from the warehouse in California en route to Indiana. (*Id*. at 45:16–19.) He drove the tractor-trailer with another Tengfei employee, who took the first driving shift. (*Id*. at 57:22–58:12.) Mr. Chen took over driving in Arizona around 2:00 a.m. and was driving when the collision occurred later that morning. (*Id*.)

Big Brother's second Motion (Doc. 167) seeks summary judgment on the independent negligence and punitive damages claims asserted against it. Mr. Chen and Tengfei joined in the Motion as to the punitive damages claim asserted against them. (Doc. 169.) Mr. Green filed a Response in opposition as to Big Brother (Doc. 179), in which Protective joined (Doc. 184) and Mr. Leggions joined in part (Doc. 188). Mr. Green filed a separate Response in opposition as to Mr. Chen and Tengfei (Doc. 181), in which Mr. Leggions joined (Doc. 190). Pursuant to a Stipulation by the parties, the Court thereafter dismissed all independent negligence claims against Big Brother. (Doc. 194.) Big Brother, Mr. Chen, and Tengfei then filed Replies in support of their requests for summary judgment on the punitive damages claims asserted against them. (Docs. 195, 197.)

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could

resolve the issue in the non-movant's favor." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

       The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 232. When the moving party does not bear the ultimate burden of proof, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party carries this initial burden of production, the nonmoving party must produce evidence to support its claim or defense. *Id.* at 1103. Summary judgment is appropriate against a party that "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

       In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence, as long as it is supported by affidavits or other evidentiary material. *Anderson*, 477 U.S. at 255. However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Id.* at 256–57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." (citation omitted)).

## III. ANALYSIS

### A. Graves Amendment Defense

Big Brother first moves for summary judgment on the grounds that it is immunized from all forms of liability for the conduct of either Mr. Chen or Tengfei under the Graves Amendment, 49 U.S.C. § 30106. The Graves Amendment was "enacted to protect the vehicle rental and leasing industry against claims for vicarious liability where the leasing or rental company's only relation to the claim was that it was the technical owner of the car." *Rein v. CAB East LLC*, No. 08-CV-2899 (PAC), 2009 WL 1748905, at *2 (S.D.N.Y. 2009). The statute provides, in relevant part:

> An owner of a motor vehicle that rents or leases the vehicle to a person (or an affiliate of the owner) shall not be liable under the law of any State or political subdivision thereof, by reason of being the owner of the vehicle (or an affiliate of the owner), for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if—
>
> (1) the owner (or an affiliate of the owner) is engaged in the trade or business of renting or leasing motor vehicles; and
>
> (2) there is no negligence or criminal wrongdoing on the part of the owner (or an affiliate of the owner).

49 U.S.C. § 30106(a). Operating through federal preemption of state laws, the immunity created by the Graves Amendment is an affirmative defense. *See, e.g.*, *Johnke v. Espinal-Quiroz*, No. 14-CV-6992, 2016 WL 454333, at *3 (*N.D. Ill. Feb. 5, 2016).

As an initial matter, Plaintiffs[4] argue Big Brother has waived any affirmative defense under the Graves Amendment because it failed to raise the defense in its Answers to their claims. (*See* Docs. 15, 36.) Big Brother concedes this, but argues its delay does not prejudice Plaintiffs. The Court does not reach this threshold dispute because it finds Big Brother is not entitled to summary judgment under the Graves Amendment in any event.

---

[4] For the purposes of this Order, the Court refers to the parties opposing the pending Motions for Summary Judgment as "Plaintiffs."

"[F]or the Graves Amendment to apply, a defendant must meet the following four elements: (1) the defendant owned the vehicle; (2) the defendant was 'engaged in the trade or business of renting or leasing motor vehicles;' (3) the defendant committed 'no negligence or criminal wrongdoing'; and (4) the defendant 'rent[ed] or lease[d] the vehicle.'" *Thayer v. Randy Marion Chevrolet Buick Cadillac, LLC*, 30 F.4th 1290, 1292 (11th Cir. 2022) (quoting 49 U.S.C. § 30106). Plaintiffs argue there are genuine issues of fact as to the second and third elements, precluding summary judgment.

To establish it was "engaged in the trade or business of renting or leasing motor vehicles," Big Brother points to Mr. Leggions's allegation that Tengfei, Big Brother, and CFI "are motor carriers and the trucks involved were being operated in furtherance of a commercial enterprise" (Doc. 1 at 4, ¶ 21), and Big Brother's admission of the same in its Answer. (Doc. 25 at 4, ¶ 21.) Standing alone, these pleadings do not establish the second element. A company's engagement in the "trade or business of renting or leasing motor vehicles" does not necessarily follow from its status as a "motor carrier." *See, e.g.*, 49 U.S.C. § 13102(14) (defining "motor carrier" as "a person providing motor vehicle transportation for compensation"). Moreover, Big Brother's Motion cites only to its admission of an allegation by Mr. Leggions and fails to explain how this binds Mr. Green.[5]

Big Brother also points to the Lease Agreement providing for Tengfei's lease of the trailer Mr. Chen was driving at the time of the collision. This evidence shows Big Brother rented the trailer to Tengfei, establishing the fourth element. But even assuming it also supports the inference Big Brother made similar agreements with others—supporting the second element—this conclusion is not required. It is also reasonable to infer, in the absence of other evidence, this was a one-off agreement. The Court is persuaded by Plaintiffs' argument that the fact Big Brother rented or leased the vehicle in question does not *ipso facto* establish it was "engaged in the trade or business of renting or leasing motor

---

[5] Big Brother cites further pleadings in its Reply that were not cited in Motion (Doc. 124) or its supporting Separate Statement of Facts (Doc. 125) and which the Court therefore will not consider. *See Surowiec v. Cap. Title Agency, Inc.*, 790 F. Supp. 3d 997, 1002 (D. Ariz. 2011) ("It is well established in this circuit that courts will not consider new arguments raised for the first time in a reply brief." (citations omitted)).

1    vehicles," lest the fourth element swallow the second. Put differently, Big Brother's
2    interpretation would render the "engaged in the trade or business of renting or leasing
3    motor vehicles" provision a mere surplusage to the earlier provision stating that preemption
4    applies to "[a]n owner of a motor vehicle that rents or leases the vehicle to a person."
5    49 U.S.C § 30106; *see Corley v. United States*, 556 U.S. 303, 314 (2009) (discussing the
6    canonical interpretative rule against surplusage).

7    Because the Court agrees with Plaintiffs that there is a genuine dispute as to the
8    second element of Big Brother's Graves Amendment defense, its first inquiry ends there.

9    **B.     *Respondeat Superior* Liability**

10   Next, Big Brother argues it is entitled to summary judgment because it did not
11   employ or control Mr. Chen and therefore cannot be held vicariously liable for his conduct.
12   As an initial matter, the Court notes that Plaintiffs responded to this argument in the context
13   of the fourth element of Big Brother's Graves Amendment defense—that Big Brother
14   committed no negligence or criminal wrongdoing. However, Big Brother raised this
15   argument as an "additional reason" it is entitled to summary judgment beyond the Graves
16   Amendment. (*See* Doc. 124 at 7; *see also id*. at 1 ("[Big Brother] moves for summary
17   judgment on all of Plaintiff's and Cross-Clamant Green's claims because . . . Big Brother
18   was not Chen's employer.")). In support of this argument, Big Brother has produced
19   evidence that Tengfei—not Big Brother—was Mr. Chen's employer.

20   Big Brother having satisfied its initial burden of production, the burden therefore is
21   on Plaintiffs to show there are factual disputes precluding summary judgment on Big
22   Brother's vicarious liability. *See Nissan Fire*, 210 F.3d at 1102–03. Accordingly, Plaintiffs
23   argue there is a genuine factual dispute as to whether Mr. Chen was sufficiently under Big
24   Brother's control at the time of the collision so as to be vicariously liable as Mr. Chen's
25   "special employer," despite having no formal employment relationship with him.

26   In *Tarron v. Bowen v. Machine & Fabricating, Inc.*, the Arizona Supreme Court
27   discussed the apportionment of liability between "general" and "special" employers.
28   235 P.3d 1030, 1033 (Ariz. 2010). The former refers to an employer who sends one of its

employees to do some work for the latter, which maintains a separate business. *Id*. "In determining liability, courts focus on 'which employer had control of the details of the particular work being done at the time of the injury-causing accident.'" *Id*. (quoting *Ruelas v. Staff Builders Pers. Servs., Inc.*, 18 P.3d 138, 140 (Ariz. Ct. App. 2001)). The inquiry is based on the objective nature of the relationships between the tortfeasor and the employers, looking to which "actually controls the work or has the right to control the accident-causing conduct and is in the best 'position to take measures to prevent the injury suffered by the third party.'" *Id*. at 1035 (quoting Restatement (3d) of Agency § 7.03 cmt. d(2)).

A comparison of several Arizona cases elucidates these principles. In *Santiago v. Phoenix Newspapers, Inc.*, the plaintiff was injured when his motorcycle collided with a newspaper delivery car. 794 P.2d 138, 139 (Ariz. 1990). The plaintiff sued the newspaper company that contracted with the driver, arguing it was vicariously liable for his injuries. *Id*. The Arizona Supreme Court held summary judgment was inappropriate "because reasonable minds may disagree on the nature of the employment relationship." *Id*. at 146. The Court concluded there was sufficient evidence to find the newspaper company had the right to control the details of the driver's newspaper deliveries, noting that "[a] worker who must comply with another's instructions about when, where, and how to work is an employee." *Id*. at 142. By contrast, the Court upheld summary judgment in favor of an employer whose employee caused an after-work car accident during an extended away-from-home assignment. *Engler v. Gulf Interstate Eng.*, 280 P.3d 599, 601–04 (Ariz. 2012). The Court noted that in "evaluat[ing] an employee's away-from-work conduct, we have not found the requisite control when the employee maintained the right to choose where, when, and how to travel, and by what route." *Id*. at 602; *see Dial-A-Messenger, Inc. v. Ariz. Dep't of Econ. Sec.*, 648 P.2d 1053, 1059 (Ariz. Ct. App. 1982) (finding no employment relationship between company and parcel-delivery drivers where the evidence was "insufficient to establish the degree of control over the manner in which the drivers perform their services"). Similarly, the Arizona Court of Appeals held summary judgment was appropriately entered in favor of a staffing agency on claims that nurses the agency

provided to a hospital abused the plaintiff while performing an enema because there was no evidence the agency "actually controlled the manner in which the nurses gave the enema or performed any aspect of their work at [the hospital]." *Ruelas*, 18 P.3d at 347.

Here, the relevant "accident-causing conduct" was Mr. Chen's driving. The question is thus whether there is sufficient evidence to support a finding that Big Brother exercised actual control over the details of Mr. Chen's driving at the time of the collision.

Plaintiffs point to the evidence of Tengfei's exclusive, long-standing, and close relationship with Big Brother. As noted, Big Brother loaded the trailer that Mr. Chen hauled at Big Brother's warehouse in California and provided the destination for its delivery—another Big Brother warehouse across the country—at which the trailer was unloaded and reloaded for hauling and delivery back to California. However, Mr. Chen testified the distinct loading/unloading and hauling/delivery tasks were performed by employees of Big Brother and Tengfei, respectively. Plaintiffs point to no evidence that Big Brother exercised control over how Mr. Chen performed his tasks of hauling and delivery. Although Mr. Chen testified he maintained communications with Big Brother while driving, Plaintiffs point to no evidence suggesting this was anything more than keeping Big Brother apprised of the status of the load and expected delivery time. Likewise, while he testified Big Brother employees assisted him with interpretation, there is no evidence to suggest this amounted to the exercise of control rather than the provision of a service.

In short, while the evidence shows Big Brother exercised some control over the *when* and *where* of Mr. Chen's driving —providing the location and timing for pick-up and delivery—it does not show that Big Brother exercised control over *how* Mr. Chen drove such that Big Brother may be deemed Mr. Chen's special employer for purposes of the torts arising from the collision. The Court therefore concludes Big Brother is entitled to summary judgment on its vicarious liability for Mr. Chen's conduct.

### C.     Punitive Damages

In its second Motion for Summary Judgment (Doc. 197), Big Brother argued the evidence in this case does not support a claim for punitive damages claim against it. As

noted, the independent negligence claims against Big Brother have since been dismissed. The Court found above that Big Brother is entitled to summary judgment on its vicarious liability for Mr. Chen's conduct. As no underlying claims for actual damages remain pending against it, Big Brother cannot be held liable for punitive damages. *See Edmond v. Fairfield Sunrise Village, Inc.*, 644 P.2d 296, 298 (Ariz. Ct. App. 1982).

Mr. Chen and Tengfei argue Plaintiffs' punitive damages claims against them fail as well. They argue that even taking the evidence in the light most favorable to Plaintiffs, their level of culpability would be of negligence, and "there is no indication whatsoever in the evidence that this was a willful action, by an evil mind guiding an evil hand." (Doc. 169 at 2.) *See Purdy as Tr. ex rel. Survivors of Jones v. Metcalf ex rel. Pima Cnty.*, 502 P.3d 36, 40 (Ariz. Ct. App. 2021) ("Summary judgment dismissing a punitive damages claim is appropriate in the absence of facts sufficient to show by clear and convincing evidence that the defendant acted with the requisite evil mind." (citation omitted)).

In *Swift Transportation Company of Arizona LLC v. Carman in and for the County of Yavapai*, the Arizona Supreme Court clarified that a punitive damages claim may only be submitted to the jury upon proof the defendant engaged in tortious conduct with an "evil mind." 515 P.3d 685, 692 (Ariz. 2022) (quoting *Volz v. Coleman Co.*, 748 P.2d 1191, 1194–95 (Ariz. 1987)). This is a higher standard than "reckless indifference to the rights or safety of others." *Id*. at 689. In a negligence case, "a plaintiff generally must show that the defendant's conduct was outrageous, oppressive or intolerable, and created a *substantial* risk of tremendous harm, thereby evidencing a *conscious* and *deliberate* disregard of the interests and rights of others." *Id*. at 692 (emphasis in original and citation omitted). Punitive damages are warranted if the conduct is "outrageous or quasi-criminal." *Id*. at 694. "[I]t will be only the rare negligence case that meets this standard." *Id*. at 693.

*Swift* involved a multi-vehicle accident precipitated by the carelessness of a commercial truck driver. *Id*. at 688, 693. The Court found that while the evidence likely established the driver's negligence, and perhaps even gross negligence, it did not establish that the driver acted with "'something more' than gross negligence that evinces an evil

- 11 -

mind." *Id*. at 694. Here, by contrast, Plaintiffs argue the evidence establishes that Mr. Chen's "outrageous and unjustified conduct rose to the level sufficient to support a punitive damages award." (Doc. 181 at 4.) They point to the following evidence in support.

According to a report by Arizona Department of Public Safety Trooper Justin Weller, the collision occurred shortly after 5:00 a.m. on March 15, 2020. (Doc. 181, Ex. A at 1.) On this stretch of Interstate 40, the speed limit was 75 miles per hour and there was no artificial light. (*Id*. at 4.) It was dark at the time of the collision. (*Id*.) Based on his review of the evidence, Mr. Green's accident-reconstruction expert, Brian Andrews, opined Mr. Green's truck was traveling around 74 miles per hour as it approached Mr. Chen's from behind. (Doc. 183, Ex. B at 15.) Tire marks indicate Mr. Green took evasive action prior to the collision, applying his brakes and steering to the left. (Doc. 181, Ex. A at 6.) Mr. Andrews opined the speed of Mr. Green's truck at the time of impact was around 65 miles per hour. (Doc. 183, Ex. B at 16.) Mr. Andrews opined the "extensive" damage to Mr. Green's truck was "consistent with a high energy impact." (Doc. 183, Ex. B at 9.) He opined the average speed of Mr. Chen's truck at impact was only 25 to 34 miles per hour. (*Id*.[6]) He concluded Mr. Chen was in violation of at least seven Federal Motor Carrier Safety Regulations ("FMCSR"), including missing reflective tape and warning devices. (*Id*. at 16.[7]) He opined "this crash occurred as a result of Mr. Green suddenly encountering a vehicle traveling at an unsafe speed, substantially less than the posted speed limit." (*Id*.)

Mr. Green's trucking safety expert, Peter Philbrick, opined that

> Mr. Chen was a professional CDL licensed diver and knew or should have known that driving at this extremely slow speed would create a hazard to himself and other drivers on the highway. Had he been driving at or near the speed limit, it is more likely than not that this crash would not have occurred.
>
> Mr. Chen testified that he did not have his emergency flashers activated, even though he knew or should have known it would have been much safer for him to do so as a professional driver. Another causal factor in this collision

---

[6] At his deposition, Mr. Chen claimed he was traveling around 68 miles per hour at the time of the collision. (Chen Dep. at 74:20–75:1.)

[7] Mr. Chen testified his taillights were working at the time but were not activated. (Chen. Dep. at 75:3–9.) He suggested he was travelling at "normal" speed. (*See id*.)

is that Mr. Chen chose not to activate his emergency flashers, a standard safety precaution in the trucking industry.

(Doc. 183, Ex. A at 4.) Mr. Andrews testified the slow speed of travel "in the dark with no warning flashers or anything other than just his normal running lights is—it just presents a tremendous danger because of the difference in speed." (Doc. 183, Ex. C at 78:14–18.)

The evidence suggests Mr. Chen left the scene after the collision. Trooper Weller testified it was apparent to him when he arrived on the scene that more than one vehicle was involved, yet he only saw Mr. Green's truck when he searched the area. (Doc. 183, Ex. D, Deposition of Justin Weller ("Weller Dep."), at 22:15–18.) Contrarily, Mr. Chen claimed at his deposition he never left the scene after the collision. (Chen Dep. at 89:18-90:19.) When Mr. Chen's testimony was read to him, Trooper Weller stated it was not true. (Weller Dep. at 55:5–57:23.) In his report, Trooper Weller noted that Mr. Chen "returned to the scene approximately one hour after the collision." (Doc. 181, Ex. A at 5.) Mr. Philbrick found this a violation of an FMCSR. (Doc. 183, Ex. A at 6.) He further opined:

> The fact that [Mr. Chen] left the scene is critical because he violated federal regulations and because it would overwrite the [Engine Control Module ("ECM")] data stored on his truck. He essentially destroyed evidence relating to this crash, including evidence of any speed or hard brake events.

(*Id.*[8]) Plaintiffs maintain that Mr. Chen's flight "eras[ed] black box data." (Doc. 181 at 7.)

Even viewing the evidence in a light most favorable to Plaintiffs, the Court finds it falls short of the high standard set forth in *Swift*. Simply put, this is not the "'most egregious of cases' warranting punitive damages." *Swift*, 515 P.3d at 694 (quoting *Linthicum v. Nationwide Life Ins. Co.*, 723 P.2d 675, 681 (Ariz. 1986)). Mr. Chen's slow driving in the dark in a 75-mile-an-hour zone with only his normal running lights activated was likely negligent, arguably grossly so. But it does not amount to the "'something more' than gross

---

[8] Neither Mr. Philbrick nor Plaintiffs cite to record evidence substantiating that Mr. Chen destroyed ECM data. However, during his deposition, Mr. Green's counsel represented to Mr. Chen that a download of information from his truck "found that all of the information about how fast you had been going, your braking, whether you had turned one way or the other, all of that information had been erased." (Chen Dep. at 136:13–24.) Mr. Chen responded that was "impossible," claiming he did not know how to delete ECM data. (*Id.*)

- 13 -

negligence that evinces an evil mind," akin to "outrageous or quasi-criminal conduct." *Id.* Even assuming that Mr. Chen lied about his speed and his flight from the scene, and that Plaintiffs can prove he destroyed evidence relating to the crash, this is post-collision conduct which cannot be the basis for punitive damages because it was not the cause of Plaintiffs' injuries. *See id.* at 694 (citing *Saucedo ex rel. Sinaloa v. Salvation Army*, 24 P.3d 1274, 1279 (Ariz. Ct. App. 2001) ("[T]he [underlying tortious] conduct giving rise to punitive damages must be a proximate cause of the harm inflicted.")). Mr. Chen's post-collision conduct is relevant to punitive damages only to the extent it sheds light on his actions and mental state at the time of the collision. Even incorporating this post-collision conduct, the totality of the evidence still falls short of establishing he acted "outrageously" at the time he drove so slowly in the dark, "consciously pursu[ing] a course of conduct knowing that it created a substantial risk of significant injury to others." *Id.* at 688.

In sum, the Court concludes Plaintiffs have not adduced sufficient evidence to submit the issue of punitive damages to the jury in this case. Mr. Chen and Tengfei are therefore entitled to summary judgment on this claim. *See Purdy*, 502 P.3d at 40.

**IT IS THEREFORE ORDERED** granting in part and denying in part Defendant Big Brother Transportation, Inc.'s Motion for Summary Judgment (Graves Amendment Defense) (Doc. 124). Big Brother is not entitled to summary judgment on its affirmative defense of immunity under the Graves Amendment, 49 U.S.C. § 30106. However, Big Brother is entitled to summary judgment on the claims of vicarious liability for negligence, wrongful death, and punitive damages asserted against Big Brother by Plaintiff Zakeeius Leggions (Doc. 1) and Cross-Claimant Alfred Green (Doc. 39).

**IT IS FURTHER ORDERED** granting in part and denying as moot in part Big Brother's Motion for Summary Judgment on Independent Direct Negligence Claims and Punitive Damages (Doc. 167). Big Brother is entitled to summary judgment on Mr. Leggions's and Mr. Green's claims for punitive damages. Big Brother's request for summary judgment on their independent negligence claims is moot in light of the Court's dismissal of same pursuant to the parties' Stipulation. (Doc. 194.)

**IT IS FURTHER ORDERED** granting Defendant Yongchau Chen's and Defendant Tengfei Trucking, Inc.'s Joinder (Doc. 169) of Big Brother's Motion for Summary Judgment on Punitive Damages (Doc. 167). Mr. Chen and Tengfei are entitled to summary judgment on Mr. Leggions's and Mr. Green's claims for punitive damages.

**IT IS FURTHER ORDERED** that this matter will proceed to trial on the remaining claims. The Court will set a pre-trial status conference by separate Order.

Dated this 13th day of September, 2023.

Honorable John J. Tuchi
United States District Judge